UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21333-CIV-LENARD/GARBER

ELIUTH ALVAREZ,                           )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )
                                          )
ROYAL ATLANTIC DEVELOPERS, INC.,          )
                                          )
        Defendant.                        )
_____ )

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Dated: June 23, 2008

Michael W. Casey, III
mcasey@ebglaw.com
Florida Bar No. 141430
Jennifer L. Poole
jpoole@ebglaw.com
Florida Bar No. 0608661
EPSTEIN BECKER & GREEN, P.C.
Suite 4300, Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Tel: (305) 579-3200
Fax: (305) 579-3201
Counsel for Defendant

# Table of Contents

Table of Cases ............................................................................................................ ii

MEMORANDUM OF LAW ..........................................................................................1

I.    Preliminary Statement ..........................................................................................1

II.    Argument ..............................................................................................................2

    A.    Summary Judgment Standard ..................................................................2

    B.    Plaintiff's National Origin Discrimination Claim....................................3

        1.    Plaintiff is Unable to Establish a Prima Facie Case as Her
                Allegations Fail to Raise an Inference of Discrimination............................3

        2.    Plaintiff is Unable to Establish a Prima Facie Case as She
                Was Unqualified for Her Job ......................................................................8

        3.    Plaintiff Fails to Establish a Prima Facie Case as Plaintiff
                Has No Comparators....................................................................................9

        4.    Plaintiff is Unable to Establish that Defendant's Legitimate,
                Non-Discriminatory Reason for Her Termination Was A
                Pretext for Discrimination..........................................................................10

    C.    Plaintiff's Retaliation Claim ...................................................................12

        1.    Plaintiff is Unable to Establish a Prima Facie Case of
                Retaliation as There is No Causal Connection Between
                Her Complaint and Her Termination .........................................................12

        2.    Plaintiff is Unable to Establish That Defendant's Legitimate,
                Non-Retaliatory, and Non-Discriminatory Reason For Her
                Termination was a Pretext for Retaliation .................................................18

CONCLUSION............................................................................................................19

## Table of Cases

*Ash v. Tyson Foods, Inc.*, 190 Fed. Appx. 924 (11th Cir. 2006) ....................................6

*Avril v. Village South, Inc.*, 934 F. Supp. 412 (S.D. Fla. 1996)...................................11

*Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095 (11th Cir. 2001) ...............4

*Baxter v. Alfa Mut. Ins. Corp.,* Case No. CA 98-1089-MJ-C,
    1999 U.S. Dist. LEXIS 14119 (S.D. Ala. Sept. 1, 1999)....................................6

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).......................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................2

*Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) .......................................3

*Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068 (11th Cir. 1995) .................3, 4, 5

*Dalmau v. Vicao Aerea Rio-Grandense, S.A.*, 337 F. Supp. 2d 1299 (S.D. Fla. 2004)..................6

*Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999)........................10

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001) .................................8

*Dickerson v. Metro Dade Cty.*, 659 F.2d 574 (5th Cir. Unit B, 1981) ...........................13

*EEOC v. Kloster Cruise Ltd.*, 897 F. Supp. 1422 (S.D. Fla.  1995) ...............................10

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990) ...................................7

*Florida State Univ. v. Sondel*, 685 So. 2d 923 (Fla. 1st DCA 1996)................................3

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (U.S. 1978)......................................5, 18

*Godoy v. Habersham Cty.*, Case No. 06-11946,
    2006 U.S. App. LEXIS 30862 (11th Cir. Dec. 12, 2005)........................................7

*Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993) ...............................12

*Hankins v. Airtran Airways*, 237 Fed. Appx. 513 (11th Cir. 2007)................................13

*Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385 (11th Cir. 1998).............................3

*Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997) ...........................................9

*Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387 (8th Cir. 1988) ..........................................13, 18

*Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313 (11th Cir. 2003) .......................................9

*Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997) .......................................................12

*Laosebikan v. Coca-Cola Co.*, 167 Fed. Appx. 758 (11th Cir. 2006) ........................................7, 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...............................................3, 4, 5, 12

*Mesnick v. General Elec. Co.*, 950 F.2d 816 (1st Cir. 1991) ....................................................14, 18

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir.  Fla. 1984) .....................4

*Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983) .............................................10

*Piquion v. Walgreen Co.*, 369 F. Supp. 2d 1339 (S.D. Fla. 2005)..................................................9

*Robinson v. AFA Serv. Corp.*, 870 F. Supp. 1077 (N.D. Ga. 1994) ........................................13, 17

*Salmon v. Dade Cty. Sch. Bd.*, 4 F. Supp. 2d 1157 (S.D. Fla. 1998) ............................................7

*Shah v. Clark Atlanta Univ.*, Case No. 1:97-CV-3786-CAM,
1999 U.S. Dist. LEXIS 22077 (N.D. Ga. July 19, 1999)....................................................13, 17

*Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253 (11th Cir. 2001) .............................................8, 10

*Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187 (11th Cir. 1985).......................................12

*Standard v. A.B.E.L. Servs.*, 161 F.3d 1318 (11th Cir. 1998)...................................................3, 11

*United States Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711 (1982) ....................................5

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763 (11th Cir. 2005)..............................................11

*Walker v. NationsBank of Fla.*, 53 F.3d 1548 (11th Cir. 1995)......................................................8

*Whatley v. Metropolitan Atlanta Transit Auth.*, 632 F.2d 1325 (5th Cir. 1980)............................13

*Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192 (11th Cir. 2004) .....................................................12

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004)...............................................3, 18

*Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453 (11th Cir. 1997) ...........................................11

Defendant, through undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 7.5, files this Motion for Summary Judgment, with Incorporated Memorandum of Law.  The undisputed facts cited herein are taken from the Defendant's Statement of Undisputed Facts ("SOF"), which has been filed concurrently herewith.

## MEMORANDUM OF LAW

### I.      Preliminary Statement

Plaintiff, Eliuth Alvarez ("Plaintiff") seeks damages for alleged employment discrimination on the basis of national origin ("Cuban-American") and for alleged retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA").  Count V of the Complaint, which alleges negligent supervision, has been dismissed.  *See* Endorsed Order (D.E. No. 33).

Plaintiff claims that, after she had been working at Royal Atlantic Developers, Inc. ("Royal Atlantic") for five months, the company's owners, (Edwin Verdezoto and his sister, Heidi Verdezoto) fired her because of her national origin.  Plaintiff's allegations of discrimination consist of one alleged stray remark (conveniently overheard while walking by someone's office) and a handful of complaints about Ms. Verdezoto's alleged superior attitude toward all employees, and her alleged micromanagement of Plaintiff's work.  In fact, Royal Atlantic and its related company, Royal Flowers, Inc., are diverse companies, with employees of numerous national origins, including:  Colombian, Cuban, Dominican, Ecuadorian, Guatemalan, Haitian, Honduran, Nicaraguan, Panamanian, Peruvian, Puerto Rican, Venezuelan, and "Anglo." SOF ¶ 2.  The Company fired Plaintiff solely because her work performance was substandard.

Plaintiff's retaliation claim is a total fraud.  Plaintiff complained of discrimination, for the first and only time, only after she learned that the Verdezotos were going to fire her.  Plaintiff's

written, discrimination complaint clearly establishes that she asserted (fabricated) her discrimination claim at that time solely in an attempt to extort a severance payment for the termination she knew was coming.  Plaintiff has no evidence of discrimination or retaliation because no such evidence exists.  Plaintiff may argue that, although the Verdezotos had decided to fire Plaintiff before she made her complaint of discrimination, her complaint of discrimination accelerated her termination by some unknown period of time.  Such an argument lacks merit because Plaintiff's letter, wherein she complained of discrimination, also clearly stated that:  (1) before making her complaint, she knew that Ms. Verdezoto already had decided to fire Plaintiff; (2) Plaintiff was unhappy working at Royal Atlantic; and, (3) Plaintiff was seeking a severance package to leave the Company.  After receiving Plaintiff's letter, the Verdezotos decided to terminate Plaintiff's employment immediately, rather than waiting to hire a replacement, because Plaintiff had expressed the desire to end her employment, because getting Plaintiff to do productive work would be problematic, and because the Verdezotos feared that Plaintiff might sabotage their computerized financial records.

## II.    Argument

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of proving that no genuine issue of material fact exists.  *Id.* 322-24.  The Eleventh Circuit Court of Appeals has stated that "[s]ummary judgment is hardly unknown, or for that matter rare, in employment discrimination cases, more than 90 percent of which are resolved before trial . . . many of them

on the basis of summary judgment for the defendant." *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (en banc).

### B. Plaintiff's National Origin Discrimination Claim

#### 1. Plaintiff Is Unable To Establish A Prima Facie Case As Her Allegations Fail To Raise An Inference Of Discrimination

In Counts I and III of the Complaint, Plaintiff alleges discrimination on the basis of her national origin, "Cuban-American," in violation of Title VII and the FCRA, respectively. Federal case law interpreting Title VII is applicable to cases arising under the FCRA. *See Florida State Univ. v. Sondel*, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996); *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998). "In order to prove discriminatory treatment in violation of Title VII, a plaintiff must first establish a prima facie case of discrimination." *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995). To do so, Plaintiff may use: (1) statistical proof of a pattern of discrimination; (2) direct evidence of discrimination; or, (3) circumstantial evidence of discrimination using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Although Plaintiff alleges that Royal Atlantic terminated other Cuban employees, she has no statistical proof of a pattern of discrimination. SOF ¶ 49. Plaintiff also has no direct evidence of discrimination. "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.* (citations omitted). Further, "remarks by non-decisionmakers or remarks unrelated to the decision making process itself are

not direct evidence of discrimination." *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1105 (11th Cir. 2001) (internal quotation marks omitted).

Here, Plaintiff preposterously alleges that one day she was coming up the stairs by the office of Donald M. Darrach, President and General Counsel for Royal Atlantic, that his office door was open, and that she conveniently overheard Mr. Darrach make a single disparaging remark to a group of people: "Cubans are dumb."  SOF ¶ 47.  Plaintiff does not recall when this happened, nor does she claim to know the context in which Mr. Darrach made this alleged remark; Plaintiff claims to have heard no other part of the conversation before or after the alleged remark.  *Id.*  Further, the alleged remark was not made as part of the decision-making process, and Mr. Darrach did not make the decision to terminate Plaintiff's employment.  *Id.* at ¶¶ 39, 47-48.  Plaintiff also admits that she never heard Mr. Darrach, Ms. Verdezoto, or any manager/supervisor tell any racial or ethnic jokes, nor did she hear any member of management suggest or imply that she would be terminated because of her national origin.  *Id.* at ¶ 48.  Accordingly, Plaintiff has failed to establish a prima facie case based on direct evidence.

Thus, Plaintiff must rely on circumstantial evidence of discrimination using the burden-shifting analysis set forth in *McDonnell Douglas*.  With this approach, Plaintiff can establish a prima facie case of discriminatory discharge by showing that:  (1) she is a member of a protected class; (2) she was qualified for the job; (3) she was subject to an adverse employment action; and (4) she was replaced or treated less favorably than someone similarly situated outside of her protected class.  *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. Fla. 1984).  If Plaintiff sets forth a *prima facie* case of discrimination, Royal Atlantic then would have the burden of producing a legitimate, nondiscriminatory explanation for the adverse action.  *Coutu*, 47 F.3d at 1073.  If Royal Atlantic did so, the burden would shift back to Plaintiff to

- 4 -

show that Royal Atlantic's given reason was merely a pretext for discrimination.  *Id.*

In applying the *McDonnell Douglas* framework, the United States Supreme Court has instructed that:

> The central focus of the inquiry in a case . . . is always whether the employer is treating "some people less favorably than others because of their race, color, religion, sex, or national origin." . . . The method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (U.S. 1978) (citation omitted).  *See also United States Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 715 (1982) (emphasizing that the *McDonnell Douglas* test was not intended to be a rigid or ritualistic test of disparate treatment).  Therefore, in evaluating Plaintiff's allegations, the Court must consider whether Plaintiff has carried the initial burden of showing that the actions taken by Royal Atlantic are ones "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII].'" *Furnco*, 438 U.S. at 576 (internal citations omitted).

Plaintiff has no prima facie case because her allegations simply fail to raise any inference of discrimination.  The Verdezotos are Ecuadorian.  SOF ¶ 2.  During the relevant time, Royal Atlantic and Royal Flowers employed approximately 56 employees of the following national origins:   Colombian, Cuban, Dominican, Ecuadorian, Guatemalan, Haitian, Honduran, Nicaraguan, Panamanian, Peruvian, Puerto Rican, Venezuelan, and Anglo.  *Id.*   Plaintiff allegedly and conveniently overheard Mr. Darrach say "Cubans are dumb" on **one occasion**, and fails to recall when this allegedly happened, and heard nothing that was said before or after this. *Id.* at ¶ 47.  In addition, this is the only disparaging statement <u>allegedly</u> made by Mr. Darrach (or

by anyone else at Royal Atlantic or Royal Flowers) which Plaintiff heard. *Id.* at ¶¶ 47, 48. Plaintiff also admits that she never heard Mr. Darrach, Ms. Verdezoto or any manager/supervisor tell any racial or ethnic jokes, nor did she hear any member of management suggest or imply that she would be terminated because of her national origin. SOF ¶ 48. Plaintiff has no evidence that Mr. Darrach's alleged remark was made as part of the decision-making process. *Id.* at ¶¶ 39, 47-48. Mr. Darrach did not make the final decision to terminate Plaintiff's employment. *Id.* at ¶ 39. The alleged remark is but a stray remark, which provides no support for a prima facie case of discriminatory termination. *Id. See Ash v. Tyson Foods, Inc.*, 190 Fed. Appx. 924, 926 (11th Cir. 2006) (per curiam) (explaining that stray remarks not uttered in context of challenged personnel actions are insufficient circumstantial evidence to provide a reasonable basis for a finding of discrimination in the context of the employment decisions at issue); *Dalmau v. Vicao Aerea Rio-Grandense*, S.A., 337 F. Supp.2d 1299, 1310 (S.D. Fla. 2004) (holding evidence of a few stray remarks related to plaintiff's protected characteristic were legally insufficient to raise a jury issue); *Baxter v. Alfa Mut. Ins. Corp.*, Case No. CA 98-1089-MJ-C, 1999 U.S. Dist. LEXIS 14119, at *50 (S.D. Ala. Sept. 1, 1999) (holding where inappropriate gender-based remarks were not made to plaintiff, and were not made during the process leading to plaintiff's discharge, such remarks were stray remarks insufficient to raise an inference of pretext or gender discrimination). Defendant recognizes that the Court for pretrial purposes has to accept Plaintiff's testimony that Mr. Darrach did make the remark in question. However, Plaintiff never mentioned that alleged remark in her EEOC Charge or in her Complaint. *See* HV Decl., ¶ 12 and Ex. B thereto; Compl. ¶¶ 9-15.[1]  Brenda Garcia ("Ms. Garcia"), formerly the Human Resources Manager during Plaintiff's employment and a second generation American of Cuban and Puerto Rican national origin, never heard any discriminatory comments or jokes concerning Cubans or <u>any</u> other

---

[1]        Mr. Darrach emphatically denied ever having made any such remark. SOF ¶ 47.

national origin from anyone in management, including the Verdezotos and Mr. Darrach.  SOF ¶ 45.  In addition, Ms. Garcia did not receive any complaints of discrimination, other than the one made by Plaintiff on October 3, 2006.  *Id.*

In further support of her discriminatory discharge claim, Plaintiff offers an assortment of vague allegations regarding treatment which allegedly constitutes national origin discrimination.  These allegations provide no support for a prima facie case, because they are conclusory and speculative.  *See Godoy v. Habersham Cty.*, Case No. 06-11946, 2006 U.S. App. LEXIS 30862, at *7 (11th Cir. Dec. 12, 2005) (holding "[t]he employee must present concrete evidence in the form of specific facts, not just conclusory allegations" to establish a prima facie case of discrimination); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (holding that to overcome the heavy burden of summary judgment in a Title VII case plaintiff must point to specific instances of discrimination and not offer mere conclusory allegations); *Salmon v. Dade Cty. Sch. Bd.*, 4 F. Supp.2d 1157, 1164 (S.D. Fla. 1998) (same).  In addition, Plaintiff admits that Ms. Verdezoto acted "superior" and "talked down" to all employees, regardless of their national origin.  SOF ¶ 42.[2]  As such, this fails to establish a prima facie case of national origin discrimination.  *See Laosebikan v. Coca-Cola Co.*, 167 Fed. Appx. 758, 765 (11th Cir. 2006) (per curiam) (holding that in a race-based case, harassing statements and conduct must be of a racial nature before they can be considered in determining whether plaintiff has established impermissible discrimination based on race).

Similarly, Plaintiff alleges that Ms. Verdezoto micromanaged Plaintiff's work, and also required another employee, Rosario Ruiz (Cuban) to complete an assignment within a short

---

[2]      Ms. Garcia, the former Human Resources Manager, admits that Ms. Verdezoto can be difficult to work with, and, at times, is unreasonable.  SOF ¶ 45.  However, Ms. Garcia (also Cuban and Puerto Rican) does not believe Ms. Verdezoto is prejudiced against Cubans, or persons of any other national origin.  Id.

deadline. SOF ¶¶ 43-44. Plaintiff can only speculate, however, that Ms. Verdezoto's actions were due to the national origin of Plaintiff and Ms. Ruiz. Neither speculation regarding management's motives, nor a personality clash with management establish discrimination. *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) (holding that "[d]iscrimination is about actual knowledge and real intent, not constructive knowledge and assumed intent"); *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1558 (11th Cir. 1995) (holding "[s]erious personality clashes may be an unwelcome reality of the workplace, and may lead . . . to unfortunate consequences for employees . . . . Nevertheless, such clashes do not, without more, form the basis for relief under Title VII"). Therefore, these allegations fail to establish a prima facie case of discrimination. *Laosebikan*, 167 Fed. Appx. at 765.

Plaintiff also alleges that Mr. Darrach screamed at Cuban employees, but not non-Cuban employees. SOF ¶¶ 46. Plaintiff fails to allege that Mr. Darrach made any ethnically disparaging or discriminatory comments when he allegedly screamed at Cuban employees. *Id.* at ¶¶ 46-47. Therefore, while such allegations may show that Mr. Darrach allegedly was boorish or unkind, they fail to establish a prima facie case of national origin discrimination. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39 (11th Cir. 2001) (holding that "Title VII[] is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."). *See also Silvera*, 244 F.3d at 1262; *Walker*, 53 F.3d at 1558.

### 2.   Plaintiff Is Unable To Establish A Prima Facie Case As She Was Unqualified For Her Job

Plaintiff also fails to establish a prima facie case of national origin discrimination, because she was unqualified for her job. The evidence establishes that Ms. Verdezoto was dissatisfied with Plaintiff's work for many reasons, and that within three months of Plaintiff's employment, Ms. Verdezoto had concluded that Plaintiff was unfit for the position. SOF ¶ 20.

Ms. Verdezoto and Mr. Verdezoto discussed Plaintiff's poor job performance several weeks before Plaintiff's termination. *Id.* at ¶ 21. Mr. Verdezoto also felt that Plaintiff was incompetent, and after the discussion with Ms. Verdezoto, he decided that Royal Atlantic should terminate Plaintiff's employment after they found a replacement. *Id.* Ms. Verdezoto had begun to search for a replacement controller several weeks before Plaintiff's final termination, and Plaintiff was aware of this. *Id.* at ¶¶ 21-28, 30.

### 3.   Plaintiff Fails To Establish A Prima Facie Case As Plaintiff Has No Comparators

In addition, to establish a prima facie case Plaintiff must identify a comparator who is "similarly situated in all relevant respects." *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Without offering specifics, Plaintiff generally contends that Royal Atlantic treated non-Cuban employees more favorably than Cuban employees. Compl., ¶¶ 11-14, 22-23, and 41-42; SOF ¶¶ 30-33, 46. Plaintiff, however, specifically identifies no other "non-Cuban" employees who were treated more favorably than she. *See Piquion v. Walgreen Co.,* 369 F. Supp.2d 1339, 1346 (S.D. Fla. 2005) (a plaintiff cannot establish a comparator when a plaintiff "offers nothing more than conclusory statements that no other employee was treated the same way" and "fails to specifically identify an employee"). Because Plaintiff has failed to identify even one similarly-situated employee who was treated differently, her prima facie case fails. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1318-19 (11th Cir. 2003) (affirming summary judgment in favor of employee where terminated employee failed to show that similarly-situated employees of other races were treated better and therefore failed to establish a prima facie case). To the contrary, the evidence has established that, prior to Plaintiff's employment, the Verdezotos had fired at least two other controllers, neither of whom was Cuban, and whose employment also lasted only a few months. SOF ¶ 6.

In sum, Plaintiff's allegations fail to raise even an inference of discrimination, and fail to establish a prima facie case of discrimination.  Plaintiff also fails to establish a prima facie case because she was unqualified to perform her job, and has not shown that Royal Atlantic treated similarly-situated, non-Cuban employees more favorably than it treated Plaintiff.

> **4.      Plaintiff Is Unable To Establish That Defendant's Legitimate, Non-Discriminatory Reason For Her Termination Was A Pretext For Discrimination**

Even if Plaintiff could establish a prima facie case of discrimination, the Verdezotos have provided legitimate, non-discriminatory reasons for her termination.  *See Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (holding that "defendant's burden of rebuttal is exceedingly light," and "the defendant's burden is 'merely one of production, not proof.'" (citations omitted)).  Specifically, Ms. Verdezoto has very high expectations of any individual in the controller position, which is an important position; and from September, 2005, through May, 2006, Royal Atlantic had two different controllers, both of whom were "non-Cuban," and had been employed only a few months before the Verdezotos fired them.  SOF ¶ 6.  In fact, Ms. Verdezoto had become dissatisfied with Plaintiff's job performance several weeks before Plaintiff's actual termination.  *Id.* at ¶¶ 20-21.  Ms. Verdezoto had discussed her dissatisfaction with Mr. Verdezoto, who concurred that Plaintiff was incompetent and should be terminated as soon as they could replace her.  *Id.* at ¶ 21.  An employee's poor performance is a legitimate, non-discriminatory reason for termination.  *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (holding poor work performance is a legitimate reason for termination of employment); *EEOC v. Kloster Cruise Ltd.*, 897 F. Supp. 1422, 1428 (S.D. Fla. 1995) (same).  In addition, Mr. Verdezoto, to whom Plaintiff attributes no discriminatory animus, made the final decision to terminate Plaintiff's employment.  SOF ¶¶ 39, 41.

Because Royal Atlantic has articulated legitimate, non-discriminatory reasons for its actions, Plaintiff, in order to defeat summary judgment, must "introduce **significantly** probative evidence that the asserted reason is merely a pretext for discrimination." *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997) (emphasis added).   Plaintiff cannot rebut Royal Atlantic's reasons with speculation and conclusory allegations.  *Silvera*, 244 F.3d at 1262. Instead, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (citation and quotation marks omitted).

Plaintiff has offered nothing beyond her bare assertions to rebut the Verdezotos' assertion that they were dissatisfied with her job performance.  SOF ¶ 44.  To establish pretext, Plaintiff cannot simply claim that her performance was adequate.  *See Standard*, 161 F.3d at 1333 (holding "[t]he heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons"); *Avril v. Village South, Inc.*, 934 F. Supp. 412, 417 (S.D. Fla. 1996) (holding that "the fact that plaintiff claims that her performance was adequate and that she believes that she was not responsible for the errors in question, is irrelevant to whether Defendant held those beliefs").  As Plaintiff is unable to establish a prima facie case of discrimination, or establish that the Verdezotos' legitimate, nondiscriminatory reasons for terminating her employment were a pretext for discrimination, the Court must grant summary judgment for Defendant on Counts I and III of the Complaint alleging discrimination on the basis of national origin in violation of Title VII and the FCRA, respectively.

C.      **Plaintiff's Retaliation Claim**

1.      **Plaintiff Is Unable To Establish A Prima Facie Case Of Retaliation As There Is No Causal Connection Between Her Complaint And Her Termination**

In Counts II and IV of the Complaint, Plaintiff alleges that the Verdezotos fired her for complaining about national origin discrimination in violation of Title VII and the FCRA, respectively.  A prima facie retaliation claim requires a showing that:  (1) the plaintiff availed herself of a protected right under Title VII or the FCRA; (2) the plaintiff was adversely affected by an employment action; and (3) there was a causal connection between the exercise of the protected right and the adverse employment action.  *See Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir. 1997).  *See also Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) (noting in a retaliation case that the FCRA is patterned after Title VII and no independent analysis of the claim under the FCRA is necessary).  As with Plaintiff's discrimination claim, the burden-shifting framework established in *McDonnell Douglas* is used to evaluate her retaliation claim.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (applying the *McDonnell Douglas* burden-shifting paradigm to retaliation claim).  Plaintiff's claim fails as she cannot establish that her termination was causally connected to her complaint.  In addition, assuming arguendo that Plaintiff could establish a prima facie case, her claim still fails as she cannot establish that Royal Atlantic's legitimate, non-retaliatory reasons for her termination were a pretext for retaliation.

To satisfy the causal connection requirement, Plaintiff must show "that the protected activity and the adverse action were not wholly unrelated."  *Hairston*, 9 F.3d at 920; *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1180 (11th Cir. 1985).  While a short lapse of time between a plaintiff's protected activity and an adverse action may raise an inference of

retaliation, such inference does not arise when intervening factors are established.  *See Dickerson v. Metro Dade Cty.*, 659 F.2d 574, 580 (5th Cir. Unit B, 1981) (finding that "not every employee who is fired after having filed charges with the EEOC will fall within the protective ambit of section 704(a)").  *See also Hankins v. Airtran Airways*, 237 Fed. Appx. 513, 520-521 (11th Cir. 2007) (holding close temporal proximity is insufficient to establish causal connection where evidence establishes an intervening act of misconduct); *Whatley v. Metropolitan Atlanta Transit Auth.*, 632 F.2d 1325, 1329 (5th Cir. 1980)[3] (finding absence of causal connection because the evidence showed that the dismissal actually was caused by a "culmination of problems growing out of appellant's manner of handling his job, his lack of cooperation within his office, his mismanagement of his staff, his refusal to comply with the terms and conditions of his job description, and his refusal to follow instructions from his supervisor"); *Shah v. Clark Atlanta Univ.*, Case No. 1:97-CV-3786-CAM, 1999 U.S. Dist. LEXIS 22077, at *55-56 (N.D. Ga. July 19, 1999) (finding absence of causal connection where defendant showed that prior to his protected activity plaintiff had been warned that if he refused to teach an assigned class, then his employment would be terminated); *Robinson v. AFA Serv. Corp.*, 870 F. Supp. 1077, 1084 (N.D. Ga. 1994) (finding absence of a causal connection, despite termination one day after employer learned of plaintiff's discrimination charge, where defendant showed that plaintiff had been warned numerous times regarding her job performance).  Further, "Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with [her] peers." *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1390 (8th

---

[3]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

Cir. 1988). *See also Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (holding a disgruntled employee should not be able to inhibit a well-deserved discharge by filing a complaint).

Here, Plaintiff complained of discrimination via her October 3, 2006, letter, and was terminated on October 4, 2006. Although this timing certainly would raise an inference of causal connection in another context, there is no inference of any such connection here. In this matter, Plaintiff knew before sending her October 3 letter to Mr. Verdezoto, that Ms. Verdezoto was searching for Plaintiff's replacement, and Plaintiff had even applied for employment with Miami-Dade College on September 20, 2006. SOF ¶¶ 21-28, 30. In fact, it was Plaintiff's knowledge of her pending termination that prompted her to fabricate her discrimination claim in the first instance. Uncontroverted testimony by Mr. Verdezoto and Ms. Verdezoto shows that several weeks before receiving Plaintiff's letter, Ms. Verdezoto and Mr. Verdezoto had conferred regarding Plaintiff's poor job performance, and decided to terminate Plaintiff after they found a replacement. *Id.* at ¶ 21. Ms. Verdezoto had begun reviewing resumes online, and interviewing replacement candidates before Plaintiff sent her October 3 letter to Mr. Verdezoto. *Id.* at ¶¶ 22-23. As part of her search for a replacement candidate, Ms. Verdezoto also had interviewed a Mr. Sanchez, and had offered him the controller position, a fact known to Plaintiff <u>before</u> she made her first and only complaint of discrimination. SOF ¶¶ 23-24, 30. Unbeknownst to Ms. Verdezoto, Mr. Sanchez apparently knew Plaintiff, and told Plaintiff that Royal Atlantic was looking to replace her, following which Plaintiff confronted Ms. Verdezoto. *Id.* at ¶¶ 23-25 During this confrontation, Ms. Verdezoto questioned Plaintiff about the fact that Plaintiff's resume was posted online, but Plaintiff denied that she was searching for other employment. *Id.* at ¶¶ 22, 26. Notwithstanding Plaintiff's denial, records obtained from Miami-Dade College,

Plaintiff's current employer, after the filing of this suit reveal that Plaintiff applied online for employment with the College on September 20, 2006 at 4:26 p.m.  *Id.* at ¶ 26.  After discussing Plaintiff's confrontation, Mr. Verdezoto and Ms. Verdezoto speculated that Plaintiff might find another position, and resign before they were able to find a replacement for her.  SOF ¶ 28.

As stated, Plaintiff acknowledges in her October 3 letter that she knew Royal Atlantic wanted to replace her:

> I found out that I am going to be replaced.  I found out about this because Heidi Verdezoto called a friend of mine to offer him my position.  I questioned her about this and she told me it was a misunderstanding of my friend because the person she wanted to replace was Rosario Ruiz, the Assistant Controller, which I thought I supervised.  I say this because I believe that if I am the person that supervises Rosario, I should be asked how she is performing before making the decision of firing her.
>
> **I do not believe Heidi Verdezoto**, because the person she called was offered the Controller position and a salary of $90,000 dollars [sic], very close to the $95,000 I earn and very far from the $55,000 that Rosario earn [sic].

*Id.*  at ¶ 30 and Pl. Dep. Ex. 3 (emphasis added).

After acknowledging that she knew that her termination was imminent, Plaintiff then switched gears to allege, for the first and only time, discrimination based on her national origin. *Id.* at ¶¶ 31-33.  In particular, Plaintiff's letter alleged "I have come to the conclusion that the reason Rosario and I [Plaintiff] are going to be fired is because of discrimination, because both of us are Cuban."  *Id.* at ¶ 31.  Plaintiff's letter then alleges that Mr. Darrach had "made several comments about Cubans, putting us down."  SOF ¶ 32.  Plaintiff's letter provided no details regarding the substance of the alleged comments, the circumstances under which the comments allegedly were made, or the frequency of the alleged comments.  *Id.* at ¶¶ 31-33.  In fact, notwithstanding the sweeping assertions in her letter, Plaintiff testified at her deposition that she

- 15 -

overheard Mr. Darrach say "Cubans are dumb" on one occasion, although she does not recall when this happened, nor did she hear anything that was said before or after this.  *Id.* at ¶ 47.  At her deposition, Plaintiff also testified that this is the only disparaging statement allegedly made by Mr. Darrach which she heard.  *Id.* at ¶¶ 47-48.  Plaintiff also admitted during deposition that she never heard Mr. Darrach, Ms. Verdezoto, or any manager/supervisor tell any racial or ethnic jokes, nor did she hear any member of management suggest or imply that she would be terminated because of her national origin.  *Id.* at ¶ 48.

After alleging that Mr. Darrach "made several comments," Plaintiff's letter then proceeded to allege that "[t]he other two Cubans in addition to Rosario Ruiz and me have been harassed and pressured a lot more than other employees in the company.  This is a clear case of discrimination not for Latin people as a whole but toward Cubans."  SOF ¶ 33.  Plaintiff's letter identified no "other two Cubans," nor did it provide details regarding the alleged harassment of Cuban employees.  *Id.* at ¶ 33.  As with her allegations regarding Mr. Darrach's alleged comments, Plaintiff's deposition testimony failed to support the assertions in her letter.  In particular, Plaintiff testified that this alleged 'harassment' and 'pressure' consisted of:  Ms. Verdezoto acting superior, and talking down to all employees, regardless of national origin;  Ms. Verdezoto micromanaging Plaintiff's work; Ms. Verdezoto requiring Ms. Ruiz to complete an assignment within a short deadline; and Mr. Darrach allegedly screaming at Cuban employees, but not non-Cuban employees.  *Id.* at ¶¶ 42-44, 46.[4]

After laying the groundwork with her allegations of discrimination, Plaintiff closed her letter by stating:  "I hope that we can discuss this and look for an agreement."  *Id.* at ¶ 34.

---

[4]      As discussed, *supra*, Plaintiff's allegations of discrimination are insufficient to raise an inference of discrimination.  Therefore, Defendant submits that Plaintiff's deposition testimony (regarding her lack of any credible evidence of any discrimination of the type asserted in her letter) demonstrates her intent to extort a severance payment at the time she complained of (non-existent) discrimination.

Clearly, Plaintiff wanted not only to leave the company, but also to negotiate a severance agreement.[5]  This truth is underscored by Plaintiff's online application to Miami-Dade College, which she submitted online on September 20, 2006 at 4:26 p.m.  *Id.* at ¶ 26.

Under the circumstances, Mr. Verdezoto believed that Plaintiff was lying about her allegations of discrimination against Cubans to leverage a severance agreement and payment. SOF ¶¶ 37-39.  While Mr. Verdezoto declined Plaintiff's demand for a severance agreement, he did agree that her employment should be terminated immediately, because Mr. Verdezoto and Ms. Verdezoto felt that it would be awkward and counterproductive for the parties to continue their working relationship, and were concerned that Plaintiff might use her access to computer and financial systems to sabotage Royal Atlantic or Royal Flowers' operations.  *Id.* at ¶ 38. Accordingly, Mr. Verdezoto decided to terminate Plaintiff's employment on October 4, 2006, rather than waiting to find a replacement for the controller position.  *Id.* at ¶¶ 36-39.

As previously stated, Mr. Verdezoto had decided to terminate Plaintiff's employment several weeks before receiving her October 3 letter.  *Id.* at ¶ 21.  The execution of Plaintiff's termination was accelerated solely by her own October 3 letter wherein she acknowledges that she knew that Royal Atlantic had decided to replace her, that she was unhappy, and that she did not want to remain employed by Royal Atlantic.  SOF ¶¶ 30-39.  Under these circumstances, the timing of Plaintiff's complaint and her termination fails to establish a causal connection between Plaintiff's October 3 letter and her October 4 termination.  *Shah*, 1999 U.S. Dist. LEXIS 22077, at *55-56 (N.D. Ga. July 19, 1999); *Robinson*, 870 F. Supp. at 1084.

---

[5]      In her deposition, Plaintiff claimed that, by closing the letter with this phrase, she wanted to work with Royal Atlantic to find an amicable resolution to the alleged discrimination.  Even a cursory reading of the letter indicates that Plaintiff did not intend to continue her employment with Royal Atlantic, and the reference to an "agreement" can only refer to severance.  Also, as stated, Plaintiff had applied for a job at Miami-Dade College on September 20, 2006, approximately two weeks before she sent her letter claiming discrimination.

2.      **Plaintiff Is Unable To Establish That Defendant's Legitimate, Non-Retaliatory, And Non-Discriminatory Reason For Her Termination Was A Pretext For Retaliation**

Moreover, assuming *arguendo* that Plaintiff established a prima facie case of retaliation, Royal Atlantic has provided legitimate, non-retaliatory, and non-discriminatory reasons for her termination.  As discussed *supra*, Ms. Verdezoto has very high expectations of any individual in the important controller position, and from September, 2005, through May, 2006, Royal Atlantic had two different controllers, whose employment had lasted only a few months because they did not meet expectations.  SOF ¶ 6.  Several weeks before Plaintiff's termination, the Verdezotos were dissatisfied with Plaintiff's job performance.  *Id.* at ¶¶ 20-21.  Ms. Verdezoto discussed the matter with Mr. Verdezoto, who concurred that Plaintiff was incompetent, and should be terminated as soon as Royal Atlantic found a replacement for her.  *Id.* at ¶ 21.  Mr. Verdezoto, to whom Plaintiff attributes no discriminatory animus, made the decision to terminate Plaintiff's employment.  *Id.* at ¶¶ 21, 39, 41.

The law is clear that the Court may not sit as a super personnel department, assessing the merit or reasonableness of Royal Atlantic's decision to replace Plaintiff, nor may Plaintiff attempt to avoid this eventuality by asserting a claim of discrimination.  *Furnco*, 438 U.S. at 578; *Jackson*, 840 F.2d at 1390; *Mesnick*, 950 F.2d at 828.  Rather, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it."  *Wilson*, 376 F.3d at 1088.  Here, rather than rebutting Royal Atlantic's legitimate, non-retaliatory reasons for her termination, Plaintiff offers only bare, self-serving assertions regarding the quality of her job performance.  SOF ¶ 44.  Furthermore, Ms. Alveraz's October 3 letter acknowledged that Royal Atlantic had decided to replace her, demonstrated that she was unhappy, did not want to remain employed by Royal Atlantic, and she wanted a

severance agreement. *Id.* at ¶¶ 30-34. Plaintiff cannot rebut Royal Atlantic's legitimate concerns that, after receiving her October 3 letter, Mr. Verdezoto and Ms. Verdezoto felt that it would be awkward and counterproductive for the parties to continue their working relationship, and that Plaintiff might use her access to computer and financial systems to sabotage Royal Atlantic or Royal Flowers' operations. *Id.* at ¶¶ 38.

As Plaintiff cannot establish a prima facie case of retaliation or establish that Defendant's legitimate, nondiscriminatory reasons for its termination of her employment were a pretext for retaliation, the Court must grant summary judgment for Defendant on Counts II and IV of the Complaint alleging retaliation in violation of Title VII and the FCRA, respectively.

<u>**CONCLUSION**</u>

For the above-stated reasons, Defendant, ROYAL ATLANTIC DEVELOPERS, INC., respectfully requests that the Court enter summary final judgment in favor of Defendant, ROYAL ATLANTIC DEVELOPERS, INC., dismiss Plaintiff's claims with prejudice, and award Defendant its costs and attorneys' fees and such other relief as the Court deems appropriate.

Dated: June 23, 2008

       **s/ Michael W. Casey, III**     
       Michael W. Casey, III
       Florida Bar No. 141430
       mcasey@ebglaw.com
       Jennifer L. Poole
       jpoole@ebglaw.com
       Florida Bar No. 0608661
       EPSTEIN BECKER & GREEN, P.C.
       Suite 4300, Wachovia Financial Center
       200 South Biscayne Boulevard
       Miami, Florida  33131
       Tel: (305) 579-3200
       Fax: (305) 579-3201
       Counsel for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21333-CIV-LENARD/GARBER

ELIUTH M. ALVAREZ,                          )
                                            )
             Plaintiff,                     )
                                            )
v.                                          )
                                            )
ROYAL ATLANTIC DEVELOPERS, INC.,            )
a Florida corporation,                      )
                                            )
             Defendant.                     )
_____     )

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 23rd day of June, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified.

<u>s/ **Michael W. Casey, III**</u>
Michael W. Casey, III

## SERVICE LIST

**Eliuth M. Alvarez v. Royal Atlantic Developers, Inc.**
**Case No. 07-21333-Civ-Lenard/Garber**
**United States District Court, Southern District of Florida**


Martin E. Leach, Esquire
mel@flmlegal.com
Feiler & Leach, P.L.
Penthouse Suite
901 Ponce de Leon Boulevard
Coral Gables, Florida  33134
Tel: (305) 441-8818
Fax: (305) 441-8081
Attorneys for Plaintiff, Eliuth M. Alvarez

[Via electronic mail using CM/ECF]