UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 07-21333-CIV-LENARD/GARBER

**ROBERTO ALVAREZ and OMAR S. GONZALEZ, as co-personal representatives of the ESTATE OF ELIUTH ALVAREZ**,

    Plaintiff,

v.

**ROYAL ATLANTIC DEVELOPERS, INC.,**

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO VACATE JUDGMENT (D.E. 212)

**THIS CAUSE** is before the Court on Defendant Royal Atlantic Developers, Inc.'s Motion to Vacate Judgment and Enter Judgment in Defendant's Favor Based on Newly Discovered Evidence of Plaintiff's Lack of Standing, Perjury and Discovery Violations ("Motion to Vacate," D.E. 212), filed on July 7, 2011.[1]  On July 25, 2011, Plaintiffs Roberto

---

[1] Also before the Court is non-party Sonya Salkin's, as the bankruptcy trustee for the Estate of Eliuth M. Alvarez, Motion to Allow Bankruptcy Trustee's General Counsel to File Response to Defendant's Motion to Vacate Judgment (D.E. 236), filed on August 18, 2011. Therein, Salkin seeks leave to file a response to Defendant's Motion to Vacate but does not specifically address what the bankruptcy trustee's response might entail or why it should be allowed to file a response.  On August 25, 2011, Defendant filed its response in opposition.  (See D.E. 237.)  No reply was filed.  Because the Court finds that the bankruptcy trustee is not a party to this action, has never moved to intervene in this action or previously notified the Court of its existence, and fails to even set forth the substance of its proposed response, the motion is **DENIED**.

Alvarez and Omar Gonzalez, as co-Personal Representatives of the Estate of Eliuth M. Alvarez, filed their response in opposition to Defendant's Motion to Vacate ("Response," D.E. 221), to which Defendant filed its reply ("Reply," D.E. 231), on August 1, 2011. Having considered the Motion to Vacate, Response, Reply, related pleadings, and the record, the Court finds as follows.

## I.   Background

On May 23, 2007, Eliuth Alvarez ("Alvarez") filed this employment discrimination lawsuit. The Complaint alleges Defendant discriminated against her based on her Cuban origin and retaliated against her based on a written complaint, all in violation of Title VII of the Civil Rights Act and the Florida Civil Rights Act. (See D.E. 1.)

On September 19, 2007, the Court issued its Order Adopting Joint Scheduling Report, Setting Pretrial Conference and Trial, Establishing Pretrial Deadlines, and Establishing Pretrial and Trial Procedures ("Trial Order," D.E. 19). The Trial Order advised that, "[t]he Parties are under a continuing obligation to supplement discovery responses within ten (10) days of receipt or other notice of new or revised information." (Id. at 2.) On October 26, 2007, Defendant served an interrogatory on Alvarez requesting that she "identify each and every civil, criminal or bankruptcy action . . . to which you have been a party." (See D.E. 212-1 at 20.) On December 17, 2007, Alvarez responded "None." (D.E. 212-2 at 5.)

On August 21, 2008, the Court granted summary judgment in Defendant's favor on all claims. (See D.E. 81.) On September 17, 2008, Alvarez filed her Notice of Appeal.

(See D.E. 82.)

On December 5, 2008, Alvarez filed her Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida in Case No. 08-28612-RAM. (See D.E. 212-3.) As part of her petition, Alvarez was required to disclose, under penalty of perjury, a Statement of Financial Affairs listing "all suits or administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." It is undisputed that Alvarez did not disclose this discrimination lawsuit which remained pending before the Eleventh Circuit. On March 18, 2009, the Bankruptcy Court discharged Alvarez's debts under 11 U.S.C. § 727, discharged the bankruptcy trustee Sonya Salkin (the "Trustee"), and closed the case. (See D.E. 212-4.)

On July 2, 2010, the Eleventh Circuit issued an opinion affirming in part, and reversing and remanding in part, the Court's grant of summary judgment to Defendant. See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253 (11th Cir. 2010). In essence, the Eleventh Circuit affirmed the Court's award of summary judgment to Defendant on Alvarez's discrimination claims, but reversed as to her claims of retaliation, finding genuine issues of material fact remained. The Eleventh Circuit's mandate was filed on September 14, 2010. (See D.E. 97.)

On September 16, 2010, the Court reopened this case and referred it to Magistrate Judge Turnoff for purposes of a settlement conference. (See D.E. 98, 99.) On September 29, 2010, the Court issued another Order setting trial for May 2011. (See D.E. 100.)

On October 19, 2010, Alvarez's counsel filed a Suggestion of Death, noting that Alvarez had passed away during the pendency of the appeal. (See D.E. 101.) Alvarez's counsel also filed a motion to have Plaintiffs Roberto Alvarez and Omar Gonzalez, as co-Personal Representatives of the Estate of Eliuth M. Alvarez, substituted into the case in her place. (See D.E. 102.) On October 20, 2010, the Court granted Plaintiffs' motion and substituted them into the case as proper parties to the litigation. (See D.E. 103.)

On November 9, 2010, the Parties attended settlement conference with Magistrate Judge Turnoff which was unsuccessful. (See D.E. 104.)

In January 2011, Plaintiffs' counsel became aware that Alvarez had previously filed for bankruptcy.[2]

On February 4, 2011, the Trustee filed an Ex Parte Motion to Reopen Case to Administer an Undisclosed Asset in the bankruptcy case, the undisclosed asset consisting of Alvarez's discrimination lawsuit. (See D.E. 212-6.) The Bankruptcy Court reopened the case the next day. (See D.E. 25 in Case No. 08-28612-RAM.)

On March 1, 2011, the Trustee filed an Application for Employment of Special Counsel. (See D.E. 212-7.) Therein, the Trustee sought authorization from the Bankruptcy Court to employ Plaintiffs' counsel, Martin Leach, as special counsel to the Trustee in the prosecution of this discrimination lawsuit. The Trustee represented that Plaintiffs' counsel

---

[2] Defendant cites to Plaintiffs' counsel's billing records indicating that counsel learned of the bankruptcy no later than January 10, 2011. (See D.E. 212-5.) Plaintiffs similarly acknowledge that counsel learned of the bankruptcy in January 2011. (See Response at 3.)

4

"does not hold or represent any interest adverse to the estate, and the Trustee believes that the employment of this attorney as a special counsel would be in the best interest of the estate." (Id. at 1.) As part of the motion, the Trustee attached the contingency fee arrangement entered into between Alvarez and Plaintiffs' counsel which requires Plaintiffs' counsel's express consent to settle any claims. (See D.E. 212-7 at 4 ("I hereby agree not to compromise or accept any type of payment for my claim without the consent of FEILER & LEACH, P.L.").) The Bankruptcy Court granted the motion and authorized the appointment of Plaintiffs' counsel as special counsel to the Trustee on March 4, 2011. (See D.E. 212-8.) As part of its Order Approving Employment of Special Counsel, the Bankruptcy Court explicitly ordered that "no settlement may be reached nor monies disbursed, without prior approval of the Bankruptcy Court." (Id. at 2.)

On April 25, 2011, the Court referred the case to settlement conference once again. (See D.E. 132.) On April 26, 2011, Magistrate Judge O'Sullivan issued an Order scheduling the settlement conference and advised that "[e]ach side shall have a party representative(s) present with full authority to negotiate and finalize any settlement reached . . . Failure of a party representative with full and final authority to make and accept offers of settlement to attend this conference may result in the undersigned's sua sponte recommendation to the District Judge that sanctions be entered against the offending party." (See D.E. 134.) On May 9, 2011, Plaintiffs and the Defendant attended settlement conference before Magistrate Judge O'Sullivan but that conference was also unsuccessful. (See D.E. 138.)

5

On May 31, 2011, trial commenced. (See D.E. 168.) At trial, Plaintiffs introduced Alvarez's deposition testimony. On June 8, 2011, the jury returned a verdict in favor of the Plaintiffs and awarded $5,480.76 in compensatory damages and $19,519.23 in punitive damages.[3] (See D.E. 185.) On June 9, 2011, the Court issued a final judgment in favor of Plaintiffs in the amount of $24,999.99. (See D.E. 196.) On July 7, 2011, Defendant filed its Motion to Vacate.

## II.     Motion to Vacate

Defendant moves to vacate the entry of judgment pursuant to Rules 59(e) and 60(b)(2) of the Federal Rules of Civil Procedure based upon the non-disclosure of Alvarez's bankruptcy. Specifically, Defendant argues that once Alvarez filed her Chapter 7 bankruptcy petition, the Trustee became the real party in interest in the lawsuit and the only entity with standing to pursue the cause of action. Because Plaintiffs lacked standing to continue to prosecute the case, Defendant believes the judgment is void. Additionally, Defendant argues the judgment should be vacated because Alvarez was judicially estopped from pursuing this case based upon her perjury in the bankruptcy proceeding. Defendant also argues that Plaintiffs violated their discovery obligations by never disclosing Alvarez's bankruptcy (despite being required to do so by this Court's Orders and the Federal Rules of Civil Procedure). Thus, Defendant believes that the judgment is void and should be vacated, Plaintiffs' claims should be dismissed, and judgment should be entered in its favor.

---

[3] On June 23, 2011, Plaintiffs' counsel filed a Verified Petition for Attorney's Fees, seeking $546,250.00 in attorney's fees and an additional $947.70 in costs. (See D.E. 198.)

6

In response, Plaintiffs argue they possessed standing to prosecute the discrimination lawsuit, any perjury was insufficient to warrant punishing Plaintiffs, the Trustee, or Alvarez's creditors, and no discovery violations occurred. Plaintiffs contend that counsel only learned of Alvarez's bankruptcy following her death and the issuance of the Eleventh Circuit's opinion. According to Plaintiffs, counsel took immediate steps to reopen the bankruptcy proceedings and have counsel appointed as special counsel to the Trustee. As such, "[a]fter discussion with the trustee, the strategic decision was made to proceed without moving for substitution." (Response at 2.) Nevertheless, Plaintiffs contend that the "Trustee was directing counsel undersigned from that point forward, including through at least one settlement conference and trial." (Id.) Plaintiffs do not dispute that Alvarez, under oath, failed to disclose the discrimination lawsuit. (Id. at 4.) Rather, they believe that judicial estoppel is inappropriate where the evidence does not suggest her non-disclosure was calculated to make a mockery of the judicial system. In support, Plaintiffs raise the fact that Alvarez was terminally ill, that summary judgment had been granted against her in this discrimination lawsuit, and cite to "the timing of the activities herein." (Id.) Plaintiffs further reiterate that the Trustee was directing this litigation, but was not required to intervene or substitute into this case and in any event "the practical realities of the case" were not affected. (Id. at 6.) With regard to the issue of standing, Plaintiffs similarly argue that substitution of the Trustee was "not jurisdictional or even mandatory." (Id. at 10.) Finally, Plaintiffs assert that Defendant was not prejudiced by any discovery violation because they

7

"would likely have moved in limine to prevent the jury from learning of the bankruptcy." (Id. at 11.) Moreover, Plaintiffs argue Alvarez's sickness precluded Alvarez from "personally" supplementing her discovery responses. (Id.)

In reply, Defendant reiterates that the concealment of Alvarez's bankruptcy resulted in wasted settlement opportunities and prejudice to Defendant at trial. Defendant urges the Court to vacate the judgment based upon Plaintiffs' lack of standing and pursuant to the doctrine of judicial estoppel.

### III.  Standard of Review

Rule 59(e) of the Federal Rules of Civil Procedure provides that, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 60(b)(2) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

### IV.  Discussion

#### A.  Standing

The Eleventh Circuit has stated that, "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." Parker v. Wendy's Intn'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) (citing Barger v. City of Cartersville, 348 F.3d 1289, 1292 (11th Cir. 2003)). The pre-

petition cause of action becomes the property of the bankruptcy estate regardless of whether the debtor disclosed its existence. See Jones v. Clayton County, 184 Fed. Appx. 840, 842 (11th Cir. 2006). As a result, "[o]nce an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." Parker, 365 F.3d at 172 (citing 11 U.S.C. § 554(a)-(c)); see also Baxley v. Pediatric Servs. of Am., Inc., 147 Fed. Appx. 59, 60 (11th Cir. 2005). Finally, the issue of standing may be raised at any time, including after the entry of judgment. See AT&T Mobility, LLC v. NASCAR, Inc., 494 F.3d 1356, 1359-60 (11th Cir. 2007); Florida Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1230 (11th Cir. 1999); Pelphrey v. Cobb County, 495 F. Supp. 2d 1311, 1314 (N.D. Ga. 2007).

The Eleventh Circuit has held on several occasions that plaintiffs bringing employment discrimination claims lose standing to pursue those claims based upon non-disclosure of the lawsuit during bankruptcy proceedings. For example, the plaintiff in Jones filed a Chapter 7 bankruptcy petition approximately nine months before filing a Title VII race discrimination lawsuit. 184 Fed. Appx. 840. The plaintiff never disclosed the discrimination lawsuit as part of the bankruptcy proceedings. Accordingly, the district court in Jones granted summary judgment for the defendant based upon the plaintiff's lack of standing. The Eleventh Circuit affirmed the entry of summary judgment stating "our caselaw make clear that Jones's failure to list this cause of action as a potential asset on his bankruptcy petition means that he lacks standing to bring this claim." Id. at 842. Similarly,

9

the plaintiff in Baxley filed a lawsuit alleging discrimination under the Family Medical Leave Act. 147 Fed. Appx. 59. Two months after she was terminated, the plaintiff filed for Chapter 7 bankruptcy protection but never disclosed her lawsuit. The district court awarded summary judgment in favor of the defendant based upon plaintiff's lack of standing. The Eleventh Circuit affirmed the entry of summary judgment finding that, "[r]egardless of Baxley's intentions or reasons for failing to disclose her employment claims on the bankruptcy schedules, Baxley's non-disclosed employment claims remain property of the estate." Id. at 60. Because the bankruptcy trustee was the real party in interest and never abandoned the discrimination claim, the plaintiff in Baxley lacked standing to bring her employment discrimination claim. Id. As a result, the law in the Eleventh Circuit is clear that only the Trustee had standing to pursue Alvarez's discrimination lawsuit once she filed for Chapter 7 bankruptcy on December 5, 2008.

Plaintiffs nonetheless argue that while "appropriate," substitution of the bankruptcy estate was unnecessary. (See Response at 10.) In support, Plaintiffs cite to Mroz v. Lee, 884 F. Supp. 246 (E.D. Mich. 1995). In Mroz, the plaintiff alleged that the defendant engaged in activity which caused the plaintiff to relapse into alcoholism and lose his financial interest in a number of businesses. 884 F. Supp. at 248. The plaintiff filed for bankruptcy in 1990 and brought the subject lawsuit a year later alleging claims for intentional infliction of emotional distress, tortious interference with business relationships, and breach of fiduciary duty. Id. After trial, a jury awarded the plaintiff damages and the defendant moved to have

10

the bankruptcy trustee substituted for the plaintiff. Id.  The district court in Mroz denied the motion for substitution based upon defendant's untimely filing, the bankruptcy trustee's failure to petition to be substituted as party, and Rule 25's discretionary nature. Id. at 249. Nevertheless, Plaintiffs fail to acknowledge the obvious distinctions between Mroz and this case.  First, the district court in Mroz never addressed the issue of standing.  Rather, the issue in Mroz was framed before the court upon a motion to substitute the bankruptcy estate. Second, the court in Mroz partially based its decision to not require substitution on the fact that the defendant was apparently aware of the plaintiff's bankruptcy for some time but waited until after trial to raise the issue.  Third, although the Trustee in this case has similarly not petitioned to be substituted for Plaintiffs as a party, the analysis surrounding substitution under Rule 25 is largely irrelevant to the more important question of whether a plaintiff possesses standing.  Finally, Mroz is a district court decision from the Eastern District of Michigan and not binding upon this Court.

    As a result, the Court finds the judgment is void.  Neither Alvarez nor her estate possessed standing to prosecute this action once she filed for bankruptcy on December 5, 2008. At that point, only the Trustee possessed standing to pursue her discrimination claims. Because the Trustee never abandoned Alvarez's claims, the Trustee never lost its sole standing to prosecute this lawsuit. Although Plaintiffs argue that the bankruptcy proceeding has been reopened and urge a "no harm, no foul" approach, the issue of standing is not a "technicality." The rationale behind divesting a debtor of standing in favor of the bankruptcy

estate is sound; the interests of a bankruptcy trustee are very different from those of a debtor alone. See In re Davis, 899 F.2d 1136, 1143 n. 15 (11th Cir. 1990) ("The bankruptcy trustee does not represent the interests of the debtor alone; rather, he owes a complex set of obligations and fiduciary duties to the court, the debtor, the shareholders (in the case of a bankrupt corporation), and, most importantly, the creditors.") (superseded by statute on other grounds by 11 U.S.C. 106(a)(4)).  Moreover, it was the lack of disclosure that precluded Defendant from raising any issue of substitution or standing at an earlier time.  Because standing is a jurisdictional requirement, a finding that a plaintiff lacks standing at the time of judgment necessarily means that judgment is void.  Even assuming Plaintiffs possessed standing when judgment was entered, the judgment should be vacated based upon the doctrine of judicial estoppel and Alvarez's inconsistent positions under oath.[4]

### B.    Judicial Estoppel

Judicial estoppel is an equitable doctrine whose purpose "is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010).  The application of judicial

---

[4] In Parker, the court suggested in dicta that the issue is more properly addressed as one of standing, rather than judicial estoppel. See 365 F.3d at 1272 ("The more appropriate defense in the Burnes case was, instead, that the debtor lacked standing").  The Court agrees that to a certain extent the dilemma caused by these types of cases is more closely related to issues of standing rather than problems raised by the assertion of inconsistent positions.

estoppel turns on: (1) whether a party took an inconsistent position, under oath, in another proceeding; and (2) whether the inconsistencies are shown to have been calculated to make a mockery of the judicial system. See Robinson, 595 F.3d at 1273; Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1294-94 (11th Cir. 2003); Burnes, 291 F.3d at 1285. Although not an exhaustive list of the factors courts should consider, typically courts should evaluate: "(1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." Burnes, 291 F.3d at 1285.

Because Plaintiffs concede that Alvarez took inconsistent positions in the bankruptcy proceedings and in this case, the Court turns to the second prong or whether the inconsistencies are shown to have been calculated to make a mockery of the judicial system. When considering a party's intent for the purpose of judicial estoppel, courts require more than "simple error or inadvertence." Robinson, 595 F.3d at 1275. With regard to bankruptcy cases like this one, the Eleventh Circuit has stated that "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" Id. (citing Barger, 348 F.3d at 1295-96). "While an estopped party's contradiction must be intentional, such intent may be inferred from the record." Id. (citing Burnes, 291 F.3d at 1285).

13

Furthermore, when evaluating potential motive, "the relevant inquiry is intent at the time of non-disclosure." Robinson, 595 F.3d at 1276 (citing Casanova v. Pre Solutions, Inc., 228 Fed. Appx. 837, 841 (11th Cir. 2007)).

In this case, the record is clear that Alvarez both had knowledge of the undisclosed claims and motive for their concealment. At the time Alvarez filed her bankruptcy petition, she was still pursuing her employment claims on appeal. See Burnes, 291 F.3d at 1288 ("Additionally, at the time that Billups petitioned the bankruptcy court to convert his case to Chapter 7, he had already filed, and was pursuing, the employment claims . . . These undisputed facts make it clear that Billups had knowledge of his claims during the bankruptcy proceedings"). Although Plaintiffs offer that Alvarez's terminal illness may have affected her non-disclosure, they fail to offer any evidence in support or explain how such illness might have affected her knowledge of the discrimination lawsuit. Furthermore, Alvarez was actively prosecuting her appeal of the Court's summary judgment ruling at the time of the non-disclosure.

More importantly, Alvarez had a clear motive for concealing this lawsuit from the bankruptcy court. Alvarez received a "no asset" discharge. By moving to reopen her bankruptcy proceedings, Plaintiffs and the Trustee implicitly acknowledge that disclosure of this lawsuit would have affected the results of the bankruptcy proceeding. See Barger, 348 F.3d at 1294 ("The debtor implicitly acknowledged 'that disclosing this information would have likely changed the result of his bankruptcy because he now seeks to re-open his

bankruptcy to include the undisclosed claims.'") (quoting Burnes, 291 F.3d at 1288). It is unlikely that Alvarez would have received the same discharge had she disclosed this pending lawsuit.

Alvarez also possessed a motive to not inform this Court of the bankruptcy proceeding. In fact, Plaintiffs' counsel admits that once they learned of the existence of the bankruptcy proceeding, both Plaintiffs and the Trustee made a "strategic decision" to proceed without moving for substitution. This "strategic decision" to not inform Defendant or this Court had real consequences. The real party in interest, the Trustee, did not participate in the settlement conference before Magistrate Judge O'Sullivan. This further violated Magistrate Judge O'Sullivan's Order requiring representatives with full authority to attend the conference. As noted above, the interests of Plaintiffs and Plaintiffs' counsel were not necessarily aligned with those of the bankruptcy estate. Moreover, pursuant to the Bankruptcy Court's Order, any settlement of this case would have required approval from that court. The lack of disclosure of the bankruptcy proceeding also constituted a violation of Plaintiffs' discovery obligations in this case and the Federal Rules of Civil Procedure. Finally, had Plaintiffs disclosed the bankruptcy proceedings prior to trial in this matter, Alvarez's bankruptcy and perjury might have been admissible at trial. Plaintiffs only respond that they would have filed a motion in limine. Finally, even if it were somehow considered acceptable for Alvarez to not disclose her bankruptcy proceeding but somehow have the Trustee "directing the show" in this litigation, there is scant evidence that the Trustee was

in fact prosecuting this case. Rather, Plaintiffs' counsel petitioned the Bankruptcy Court to be appointed special counsel and as noted by Defendant, billing records submitted by Plaintiffs' counsel do not suggest overwhelming participation.[5] (See Reply at 3 n.2; D.E. 214-1.)

The concern of judicial estoppel is protection of the integrity of the judicial system from deliberate manipulation. The record in this case demonstrates intentional manipulation of both this Court and the Bankruptcy Court. While Plaintiffs' attempt to reopen the bankruptcy proceeding may mitigate some of the harm inflicted there, Alvarez's failure to disclose her bankruptcy proceeding in this case and Plaintiffs' (and Plaintiffs' counsel's) "strategic" and steadfast refusal to disclose the inconsistent positions has resulted in manipulation of both courts. In short, the record overwhelmingly supports an inference that the inconsistent positions taken were calculated to make a mockery of the judicial system. Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

  **1.**  Defendant Royal Atlantic Developers, Inc.'s Motion to Vacate Judgment and Enter Judgment in Defendant's Favor Based on Newly Discovered Evidence of Plaintiff's Lack of Standing, Perjury and Discovery Violations (D.E. 212), filed on July 7, 2011, is **GRANTED**;

  **2.**  The Motion to Allow Bankruptcy Trustee's General Counsel to File Response

---

[5] It is worth noting that the Trustee has still not moved for substitution in this case or otherwise sought to intervene, despite its status as the only real party in interest in this litigation.

16

to Defendant's Motion to Vacate Judgment (D.E. 236), filed on August 18, 2011, is **DENIED**;

3. The Final Judgment (D.E. 196) entered in favor of Plaintiffs is **VACATED**;

4. Plaintiffs' claims are **DISMISSED** for lack of standing. Alternatively, Defendant is entitled to judgment in its favor based upon the doctrine of judicial estoppel;

5. All other pending motions are **DENIED AS MOOT**;

6. This case remains **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of December, 2011.

                                          **JOAN A. LENARD**
                                          **UNITED STATES DISTRICT JUDGE**